Filed 8/18/23  In re C.P. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re C.P., a Person Coming Under Juvenile Court Law. | B325963 c/w B323281 |
| _____ <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> F.P., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP05504) |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Conditionally affirmed and remanded.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Mother.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

_____

### INTRODUCTION

Mother appeals from termination of her parental rights to daughter (born August 2019), asserting substantial evidence did not support the juvenile court's finding that the parental-benefit exception to adoption set forth in Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i) was inapplicable.[1] She also argues the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with their inquiry duties under section 224.2, subdivision (b)—the California statute implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). DCFS concedes there is no record that it inquired of maternal extended family members about Native American ancestry, and requests we conditionally affirm and remand for ICWA compliance.

We conclude the court properly denied the parental-benefit exception. We conditionally affirm the termination of parental rights and remand to allow DCFS to remedy the ICWA inquiry errors and the juvenile court to determine anew whether ICWA applies.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2019, the juvenile court found jurisdiction over newborn daughter based on mother's use of amphetamine, methamphetamine, and marijuana during pregnancy. The court removed daughter from mother's custody and ordered mother to have at least nine hours of monitored visitation per week. The reunification plan for mother included a drug treatment program, random drug testing, individual

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

counseling, and parenting education.  Mother never reunified with daughter.

## 1. *Reunification Period*

Mother consistently visited daughter nine hours per week; visits at first were unmonitored.  She later had overnight visits.  By September 2020, mother had relapsed, and the juvenile court changed the visitation to monitored.  Unmonitored visits would be reinstated if mother provided four consecutive, negative drug tests.  Because mother continued to test positive for illicit substances or altogether miss drug testing, her visitation remained monitored for the remainder of the case.

Social workers and daughter's caregiver consistently reported mother had a good relationship with daughter and was attentive to daughter during visitation.  The two had a strong, positive bond.

At the 18-month review hearing on July 20, 2021, the juvenile court terminated reunification services because mother had only partially complied with her case plan.  The court set the matter for a section 366.26 termination of parental rights hearing.

## 2. *Post-Reunification Period*

While the section 366.26 hearing was pending, mother had biweekly two- to three-hour visits with daughter, monitored in the caretaker's home.

Between November 2021 and June 2022, mother failed to drug test 32 times.  In July and August 2022, she tested negative three times.  Due to mother's failure to drug test as required, on August 23, 2022, the court ordered no visitation until mother more consistently tested clean.

After August 2022, mother failed to drug test, even missing a make-up test scheduled at mother's request. The juvenile court kept to its word and mother did not visit daughter during the four months preceding termination of parental rights.

On October 14, 2022, mother filed a section 388 petition (not the subject of this appeal) requesting custody of daughter or renewed reunification services and liberalized visits. DCFS responded that the social worker could not get in contact with mother, mother had not drug tested since August 2022, and mother was not visiting daughter consistently because of her failure to test clean.

Because daughter exhibited developmental delays as a baby and was diagnosed with autism and speech delays as a toddler, DCFS sought to obtain therapy and other resources for her. On the morning of November 28, 2022, mother attended but fell asleep during daughter's Individualized Education Plan (IEP) meeting. Mother subsequently declined consent for daughter to receive recommended special education services to address autism and speech issues.[2]

As a result, DCFS requested a court order to permit daughter to participate in special education services and allow the caretaker to provide consent. At the request of daughter's attorney, the court appointed daughter's caretaker as a co-holder of educational and developmental rights.

---

[2]     This was not the first time mother had declined services for daughter. On September 11, 2020, mother declined consent for daughter to receive Regional Center services for global developmental delays, which had been discovered during an assessment by a pediatric physical therapist. Mother eventually gave consent, and daughter received services.

4

### 3. *Termination of Parental Rights*

On December 13, 2022, the juvenile court held the combined section 388 and 366.26 hearing; mother appeared remotely. The court received the DCFS reports into evidence, as well as mother's section 388 petition, attachments, and visitation log. The court heard argument on the section 388 petition and denied it based on mother's failure to drug test and her failure to consent to special education services for daughter.

Mother presented no additional evidence for the section 366.26 hearing, nor did she testify. Her attorney asked the court to select legal guardianship as daughter's permanent plan, urging the parental-benefit exception to adoption applied because mother and daughter shared a strong parent-child relationship established through ongoing visitation.

DCFS sought termination of parental rights, asserting mother had not established the parental-benefit exception. Daughter's attorney asked the court to follow DCFS's recommendation and terminate parental rights. Counsel pointed out that regular visits stopped in August 2022 because mother refused to drug test. While there was evidence that earlier visits had gone well, there was no indication the child would suffer detriment if parental rights were terminated.

The juvenile court found the parental-benefit exception did not apply. The court relied on the following: daughter had lived outside of mother's custody for almost her entire life, had resided with her current caretaker for three years, and had special needs that mother appeared unwilling to address. The court expressed concern with mother's addiction and concluded that maintaining the parental relationship would lead to instability. Finding daughter likely to be adopted if parental rights were terminated

5

and no exceptions to adoption applied, the court terminated parental rights to free daughter for adoption by her long-term caretaker.

While the court was announcing its ruling, mother apparently had fallen asleep and was audibly snoring.

### 4. *ICWA Inquiry*

At the inception of this case, mother denied, in court and by written attestation, having Native American ancestry. In making its jurisdictional and dispositional findings, the court found the ICWA did not apply.

On July 12, 2022, the court ordered DCFS to discuss with mother and her relatives whether daughter may be an Indian child and to include the information in the next report. In response, on August 11, 2022, DCFS reported only that mother denied she or any family member had American Indian heritage. There was no indication that DCFS had contacted any relatives. At the December 13, 2022 hearing, when the court terminated parental rights, the court again stated the ICWA did not apply.

Even though DCFS was in contact with, or had contact information for, the maternal great-aunt and two maternal aunts, DCFS did not inquire with them or any other extended family members about Native American heritage.

### 5. *Appeals*

On September 1, 2022, mother filed a notice of appeal (case no. B323281) from the juvenile court's August 23, 2022 denial of an earlier section 388 petition, a petition which we do not discuss. On December 13, 2022, mother filed a notice of appeal (case No. B325963), appealing from termination of parental rights. On March 9, 2023, we consolidated the two appeals for purposes of

6

briefing, argument, and decision.  In briefing, mother challenges only the termination of her parental rights.

### *DISCUSSION*

Mother argues the court erred in declining to apply the parental-benefit exception to adoption and that DCFS failed to satisfy its ICWA inquiry duties.

### 1.      *The Parental-Benefit Exception*

#### a.      **Applicable Law**

The goal of section 366.26 proceedings is "to provide stable, permanent homes" for dependent children.  (§ 366.26, subd. (b).)  In cases where the juvenile court terminates reunification services, adoption is the legislature's preferred permanent plan for the child.  (§ 366.26, subd. (b)(1); see also *In re Celine R.* (2003) 31 Cal.4th 45, 53.)  If the juvenile court finds the child is adoptable, "the court must order adoption and its necessary consequence, termination of parental rights," unless a parent can demonstrate one of the section 366.26 exceptions to adoption.  (*In re Celine R.,* at p. 53; see also § 366.26, subd. (c)(1); *In re Caden C.* (2021) 11 Cal.5th 614, 625 (*Caden C.*).)

Under the parental-benefit exception, the parent must "establish, by a preponderance of the evidence," "(1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child."  (*Caden C., supra,* 11 Cal.5th at pp. 629, 631.)

The first element is straightforward and focuses on whether visitation was regular or not.  For the second element, "the focus is the child.  And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or

7

"negative" effect of interaction between parent and child, and the child's particular needs.' . . . [C]ourts often consider how children feel about, interact with, look to, or talk about their parents." (*Caden C., supra,* 11 Cal.5th at p. 632.) As to the third element, "[w]hat courts need to determine, therefore, is how the child would be affected by losing the parental relationship — in effect, what life would be like for the child in an adoptive home without the parent in the child's life." (*Id.* at p. 633.)

When assessing whether the parental-benefit exception applies, "the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Essentially, "the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Caden C., supra,* 11 Cal.5th at p. 631.)

We review the juvenile court's findings on the first two elements – visitation and the existence of a beneficial parent-child relationship – for substantial evidence. (*Caden C., supra,* 11 Cal.5th at p. 639.) We review for abuse of discretion the court's assessment whether termination of parental rights would be detrimental to the child. (*Id.* at p. 640.)

8

### b.    The Court Did Not Err When It Found the Parental-Benefit Exception Did Not Apply

We conclude the court did not err when it found the parental-benefit exception did not apply.  As to the first element, although early in the dependency proceedings mother regularly visited daughter, by August 23, 2022 mother's drug use resulted in the court terminating visitation until mother tested negative. No visitation occurred from August 23 to December 12, 2022, the date of the section 366.26 hearing.

"Sporadic visitation is insufficient to satisfy the first prong of the parent-child relationship exception to adoption."  (*In re C.F.* (2011) 193 Cal.App.4th 549, 554; see also *In re J.C.* (2014) 226 Cal.App.4th 503, 531 [regular visitation not present when there were significant lapses in visitation]; *In re I.R.* (2014) 226 Cal.App.4th 201, 212 ["significant lapses in visits . . . fatally undermine any attempt to find the beneficial parental relationship exception"].)

There is no disagreement that mother failed to visit daughter during the four months preceding termination of parental rights.  To the extent mother excuses this absence because the trial court had cancelled visitation, we are not moved.  Between November 2021 and June 2022, mother failed to drug test 32 times.  On August 23, 2022, the court terminated visitation until mother tested negatively.  Mother apparently never did, and the trial court maintained the visitation ban.  It is mother who is responsible for her not having visited daughter during arguably the four most critical months of these proceedings.

9

Mother's inconsistent visitation alone supported the denial of the parental-benefit exception. As this element is decisive, we need not address the others.

**2.**     ***We Remand for ICWA Compliance***

Mother argues that DCFS failed to inquire of extended maternal family members about Native American ancestry, as required by section 224.2, subdivision (b). DCFS concedes that, even though it had relevant contact information about maternal relatives, the record does not contain any indication that the department discussed Native American ancestry with those relatives.

From the department's brief, "DCFS does not oppose a conditional affirmance of the order terminating parental rights and remand of the action to the juvenile court with directions to order DCFS to inquire of the available maternal relatives regarding whether the child may be an Indian child." We have reviewed the record and agree DCFS failed to satisfy ICWA's inquiry provisions. We therefore conditionally affirm the order and remand for compliance.

### *DISPOSITION*

The termination of parental rights order is conditionally affirmed and remanded to the juvenile court for the limited purpose of ensuring compliance with the inquiry provisions of section 224.2. The court shall order DCFS to complete an inquiry into daughter's Indian ancestry by making reasonable efforts to interview available maternal extended family members. Nothing in this disposition precludes the court from ordering additional inquiry of available extended relatives or others having an interest in the child. If, after ICWA compliance, the juvenile court determines that ICWA does not apply, the order

10

terminating parental rights shall remain in effect. If the court determines ICWA applies, it shall vacate the order and proceed in accordance with ICWA and related state law.


                                        RUBIN, P. J.

WE CONCUR:




        BAKER, J.                        MOOR, J.


11